## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

| | | |
|---|---|---|
| TERRY BLACKMORE, and | ) | |
| JASON KLINGENBERG, | ) | |
| | ) | |
|     each on behalf of himself | ) | |
|     and all others similarly situated, | ) | |
| | ) | |
|         Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 5:19-cv-4052 |
| | ) | |
| | ) | |
| SMITTY'S SUPPLY, INC. | ) | |
| | ) | |
|         Defendant. | ) | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs, on behalf of themselves and all others similarly situated, and for their Class Action Complaint state and allege as follows:

## INTRODUCTION

1.       For years, Defendant has deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as "303" fluid meeting "303" specifications when, in fact, the "303" designation is obsolete and 303 specifications have not been available for over forty (40) years. Defendant has also deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as meeting certain manufacturer specifications and providing certain anti-wear and protective benefits when, in fact, Defendant knew, or should have known, the fluid it sells does not meet all listed manufacturer specifications and does not contain the anti-wear and protective properties required in Tractor Hydraulic Fluid.  Instead, the "303" fluid is a fluid mixed from line wash and other lubricant products (including some used products) that are not suitable for use as ingredients in a Tractor Hydraulic Fluid.

1

2. Tractor Hydraulic Fluid (THF) is a multifunctional lubricant that has been manufactured for and used in tractors and equipment for over fifty (50) years. It is designed to act as a hydraulic fluid, transmission fluid and gear oil for this equipment. In the 1960s and early 1970s, John Deere (Deere) manufactured a popular and widely used THF called JD-303 or simply "303," and the term "303" became synonymous with the John Deere name and this high-quality and effective THF product.

3. Sperm whale oil was an essential ingredient in Deere's 303 THF. In the mid-1970s, the passage of laws protecting endangered species outlawed the use of sperm whale oil. Deere's "303" formula could no longer be manufactured or sold, and because its essential ingredient—sperm whale oil—could no longer be used, the designation became obsolete and there are no specifications available for "303" tractor hydraulic fluids. Deere was forced to manufacture a new tractor hydraulic fluid with different additives that would be both effective and affordable.

4. After it stopped producing and selling its 303 THF, Deere manufactured and sold several THF products with certain ingredient, viscosity, anti-wear and detergent additive specifications, including initially offering J14B, J20A and J20B. Many other manufacturers created and sold fluids that purported to be similar to these new products while others continued to offer a "303" product. The J14B specification became obsolete in the late 1970s. J20A and J20B were then offered and, during the time the J20A/B specifications were in use, Deere used a licensing program called Quatrol to police the quality of THF products in the marketplace. The Quatrol program required blenders and sellers of competing THF products to submit test data to Deere prior to the use of the J20A/B specification on their product labels, to ensure the products met the advertised specifications.

2

5.    In the late 1980s or early 1990s, Deere abandoned the J20A/B specification as well.    John Deere then and now manufactures and sells THF meeting a specification called J20C or J20D (low viscosity).   The J20C fluid is sold under the name "Hy-Gard," and many other manufacturers market and sell products which they contend meet the J20C specification in order to compete with John Deere.  The following timeline illustrates the history of 303 THF:



**TRACTOR HYDRAULIC FLUID (THF) TIMELINE**

JOHN DEERE THF SPECIFICATIONS

| | Discontinued |
| | Current |

| John Deere Specification | Comment | JD Issue Date |
|---|---|---|
| JDM J20D[3] | THF for cold climates | 1989 - Current |
| JDM J20C[2] | Primary THF specification | 1989 - Current |
| JDM J20B[3] | DISCONTINUED – replaced by JDM J20D | 1978 - 1989 |
| JDM J20A[2] | DISCONTINUED – replaced by JDM J20C | 1978 - 1989 |
| JDM J14B | DISCONTINUED – replaced by JDM J20A/B | 1974 - 1978 |
| JDM J303[1] | DISCONTINUED – replaced by JDM J14B | 1960 - 1974 |

Footnotes:
1.   There are no specifications available for 303 Tractor Hydraulic Fluids and, as such, products making only "303" claims cannot be tested to assure compliance with any known specifications.
2.   Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Summer or warm weather climates)
3.   Low Viscosity Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Winter or cold weather climates)

6.    John Deere discontinued the Quatrol program around the time J20A was discontinued (approximately 1989). The subsequent lack of a quality control program or policing of the products in the market resulted in a "free for all" with respect to the THF manufactured and sold in the open market and the opportunity for unscrupulous manufacturers and sellers to falsely use the Deere specifications (and other manufacturers' specifications) on the labels of the THF products they sell.

7.    Defendant deceptively and illegally trades on the obsolete and non-existent "303" designation, the other obsolete J14B and J20A specifications, and the John Deere trade name that was and has continued to be so prevalent in the industry.   This was deceptive as there is no

3

known "303" specification, and there is no way for manufacturers, sellers, or anyone else to truthfully claim a product meets or is in compliance with any such specification.

8.      Nonetheless, Defendant manufactures and sells its Super S Super Trac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, and Cam 2 Promax 303 Tractor Hydraulic Oil (together referred to as "303 THF Products") as lower cost alternatives, and offers them for sale as economically priced tractor hydraulic fluids that meet many (or in some cases all) manufacturers' specifications, have effective lubricant and anti-wear additives and properties, and are safe for use in purchasers' equipment. The Cam2 Promax 303 Tractor Hydraulic Oil is the same fluid as Super S 303 Tractor Hydraulic Fluid, which fluid is the same fluid as Super S Super Trac 303 Tractor Hydraulic Fluid.  These THF Products have been sold with eye-catching photos of modern tractors and industrial equipment and are sold in bright, yellow 5-gallon buckets.  By name dropping a list of equipment manufacturers, Defendant seeks to create an impression of quality and take advantage of consumers' lack of understanding of the multitude of complex manufacturer specifications.

9.      In addition to deceptively promoting a designation that is obsolete, Defendant uses poor quality base oils, waste oil, line flush, used oils and diluted additive packages in its 303 THF products in order to keep production costs down and increase profits.  As a result of the inferior ingredients and this "down-treating" of additive packages, Defendant's 303 THF Products not only lack the required lubricant and protective benefits offered to purchasers, the fluids actually expose purchasers' equipment to increased wear and risk of damage to the spiral gear, excessive wear in the planetaries, improper and poor shifting, seal leakage, and improper operation of the wet brakes. Despite use of these inferior ingredients and inadequate protective

additives, the 303 THF Products are labeled and marketed to unsuspecting purchasers as meeting manufacturer specifications and providing certain benefits and anti-wear properties.

10.    In November 2017, because of the deceptive nature of the 303 THF Products, the failures of the 303 THF Products to meet any published specification, and the damage the products could cause to consumers' equipment, the State of Missouri's Department of Agriculture, Division of Weights and Measures, banned Defendant and all other manufacturers and sellers from offering these type of "303" tractor hydraulic fluid products for sale in Missouri. The states of Georgia and North Carolina followed suit.

11.    Despite the ban of "303" THF in several states and the increased scrutiny on those products throughout the country, Defendant continued to sell its 303 THF products in the state of Iowa and all other states where the fluid has not been banned.

12.    Defendant's conduct has harmed and continues to harm purchasers like Plaintiff, who purchased Defendant's 303 THF Products that were offered and sold as acceptable tractor hydraulic fluids that meet certain manufacturer specifications, as fluids that are safe for use in farm, construction and logging equipment, and as having certain characteristics and qualities that protect equipment from wear and damage.

13.    In reality, instead of receiving a product that was an acceptable tractor hydraulic fluid that met manufacturers' specifications, Plaintiffs and other purchasers received 303 THF Products that, contrary to Defendant's labeling, had no known specifications, had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications on these products.  These products therefore exposed purchasers' equipment to harm, increased wear and

damage, and caused purchasers to overpay for a product that was worthless and/or worth much less than the sale price.

14.     In late 2017, around the time of the stop sale order and ban of 303 THF in Missouri and other states, Defendant Smitty's modified the label of its Super S Super Trac 303 Tractor Hydraulic Fluid, changing the name to "Super S 303 Tractor Hydraulic Fluid."  Because the photos of the equipment on the labels were deceptive and misleading, Smitty's removed the pictures of the modern equipment and replaced those pictures with images of older, simpler tractors on the front of the label.

15.     At that time, however, no others changes were made to the labels despite the fact that management employees at Smitty's knew of the deceptive and misleading representations about the physical and performance properties of the fluid, the representations about the testing that was purportedly performed on the fluid, and the list of equipment manufacturers' names contained on the Super S 303 label.  Incredibly, Smitty's continued to sell its 303 THF Products in Iowa and throughout the United States with those misrepresentations knowingly being made to purchasers like Plaintiffs.

16.     Like many other consumers throughout the country, Plaintiffs Terry Blackmore and  Jason Klingenberg  purchased Defendants' 303 THF Products in Iowa and suffered damage as a result.

**PARTIES**

17.     Plaintiff Terry Blackmore is a citizen and resident of Plymouth County, Iowa.

18.     Plaintiff Jason Klingenberg is a citizen and resident of Lyon County, Iowa.

19.     Defendant Smitty's Supply, Inc. is a for-profit company incorporated in the state of Louisiana and with its principal place of business at 63399 Hwy. 51 North, Roseland,

Louisiana 74056. Defendant Smitty's Supply, Inc. owns Cam2 and Cam 2 is a division of Smitty's. Smitty's has advertised and sold its products, including its Super S Super Trac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, and Cam2 Promax 303 Tractor Hydraulic Oil, throughout the state of Iowa and the United States.

20. Defendant's conduct has harmed purchasers like Plaintiffs by inducing them to purchase and use Defendant's 303 THF Products through the false promise that the 303 THF Products meet certain specifications and by directly or implicitly representing that the products are safe for use in farm, construction and logging equipment and have certain characteristics and qualities that protect equipment from wear and damage when, in reality, the products do not meet any specifications and cause harm, increased wear and damage to equipment.

## JURISDICTION AND VENUE

21. This action is filed in United States District Court for the Northern District of Iowa, which is an appropriate venue because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment occurred in Iowa and elsewhere.

22. The United States District Court for the Northern District of Iowa has personal jurisdiction over Defendant because Defendant transact business in Iowa, through its various advertising methods and product sales directed toward Iowa residents. Additionally, Plaintiffs Blackmore and Klingenberg purchased the products at issue in Iowa.

23. Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d). The amount in controversy in this action exceeds $5,000,000.00, exclusive of interest and costs. Upon information and belief, Defendant's sales of the Cam2 ProxMax 303, Super S 303, and Super S SuperTrac 303 products total more than $2,000,000.00 retail in Iowa during the stated Class Period. On behalf of themselves and all Class Members, Plaintiffs seek

7

damages which include return of all amounts paid by Iowa purchasers for the Cam2 ProxMax 303, Super S 303, and Super S SuperTrac 303 products. Also upon information and belief, the costs of a common flushing remedy and other common repairs to equipment necessitated as a result of use of the products at issue exceeds $3,000,000.00. On behalf of themselves and all Class Members, Plaintiffs also seek recovery for the costs of these common flushing remedies and repairs. Finally, on behalf of themselves and Class Members, Plaintiffs also seek punitive damages and attorneys' fees.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

24.     Defendant Smitty's (which as set forth above, includes Cam 2) is in the business of manufacturing certain merchandise or retail products which are to be sold in trade or commerce at retail stores within the state of Iowa and throughout the United States.

25.     During some or all of the time period from 2014 to the present, Defendant sold and advertised in yellow buckets 303 THF Products called Super S Super Trac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, and Cam2 Promax 303 Tractor Hydraulic Oil.

26.     During some or all of the time period from 2014 to the present, Defendant Smitty's manufactured and advertised the Super S Super Trac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, and Cam2 Promax 303 Tractor Hydraulic Oil which was sold in Iowa by various retailers.

## Defendants' Deceptive Labeling, Marketing and Advertising

27.     During some or all of the time period from 2014 to the present, Defendant offered the 303 THF Products for sale at retail stores all over Iowa as a product suitable for use as a

8

tractor hydraulic fluid and as a fluid that provided certain performance benefits and met or had equivalency to a wide number of manufacturers' specifications.

28. Defendant falsely and deceptively labeled, marketed and offered for sale the 303 THF Products (1) as meeting manufacturer specifications and being acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) as a substitute for and satisfying John Deere's JD-303 specifications; (3) as a fluid that provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) as a fluid that protects against rust and corrosion; and (5) as a fluid designed for use in equipment manufactured by Allis-Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere, Oliver, Ford and Caterpillar.

29. Defendant's labeling, marketing, advertising and sale of the 303 THF Products has been widespread, continuous and contained on various signs, labels and advertisements throughout Iowa for years.

30. Until late 2017 or early 2018, Defendant's Super S Super Trac 303 Tractor Hydraulic Fluid was specifically labeled, marketed and advertised as follows:


## Super S SuperTrac 303 Tractor Hydraulic Fluid

**Super S SuperTrac 303 Tractor Hydraulic Fluid** is designed to lubricate the transmission, differential and final drive gears in tractors and implements. It is a multi-functional fluid used as a hydraulic medium, and as a power steering, power brake, power take-off (PTO), and implement drive fluid.

### FEATURES/ BENEFITS

- Lubricates the transmission, differential and final drive gears in tractors and implements
- Provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pump
- Protects against rust and corrosion
- Provides excellent results for foam suppression and water sensitivity
- Controlled frictional characteristics permit the wet brakes to hold properly, reduces brake chatter and provides for smooth engagement of power take-off (PTO) clutches.

### APPLICATIONS

**SuperTrac 303 Tractor Hydraulic Fluid** is designed for use as a replacement fluid for the hydraulic, wet brake, and transmission requirements of equipment manufacturers where a product of this quality is recommended, including:

| | | |
|---|---|---|
| Allis Chalmers | Allison | Caterpillar |
| Deutz | Ford Tractor | International Harvester |
| J I Case/David Brown | John Deere 303, J20A | Kubota |
| Massey Ferguson | Oliver | White |

31.     The Super S Super Trac 303 buckets contain the following, similar information:



32.     These representations were also contained in Defendant's advertising circulars and/or on Defendant's websites.

10

33.     During some or all of the past five years, the Cam2 Promax 303 Tractor Hydraulic Oil buckets contain the following, similar information:



## PROMAX™ 303 Tractor Hydraulic Oil

**CAM2 PROMAX™ TRACTOR HYDRAULIC 303 OIL** is general-purpose lubricant for farm and industrial tractors and construction equipment. CAM2 PROMAX™ Tractor Hydraulic 303 Oil provides performance in the areas of anti-wear, PTO clutch, rust protection, extreme pressure properties, water sensitivity, foam surpression and brake chatter reduction. CAM2 PROMAX™ Tractor Hydraulic 303 Oil is recommended for ambient temperatures between +32°F and 104°F (0°C to 40°C). For ambient temperatures outside this range or where a premium tractor hydraulic/transmission oil is required, please use a CAM2 Premium Tractor Hydraulic Fluid. CAM2 PROMAX™ Tractor Hydraulic 303 Fluid is suitable as a replacement for the following manufacturers where a tractor hydraulic fluid of this performance level is recommended:

Allis Chalmers®        Ford® Tractor                    Kubota®
Allison®               International Harvester®          Massey Ferguson®
Caterpillar®           JI Case®/David Brown®            Oliver®
Deutz®                 John Deere® 303, J20A            White®

*Misapplication may cause severe performance problems. CAM2® PROMAX™ Tractor Hydraulic 303 Fluid has not been recommended by any OEM for model years later than 1974. For equipment built after 1974 requiring multi-functional fluid, use a CAM2® Premium Tractor Hydraulic Fluid.*

| 3/1 GAL | 80565-16731 |
| 3/2 GAL | 80565-16732 |
| 5 GAL   | 80565-16705 |
| 55 GAL  | 80565-16755 |
| BULK    | 80565-16711 |

34.     From late 2017 through 2018, the Super S 303 Tractor Hydraulic Fluid buckets contained the following information:

11



35.     Defendant's labeling thus specifically represented that the 303 THF Products being sold were acceptable for use and were:

- Field Tested

- Suitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality if recommended:  Allis Chalmers, Allison, Caterpillar, Deutz, Ford Tractor, International Harvester, JI Case/David Brown, John Deere 303, Kubota, Massey Ferguson, Oliver, White

- Providing excellent results in the areas of:
  1. Anti-wear properties
  2. Brake Chatter
  3. Extreme Pressure Properties
  4. Foam Suppression
  5. PTO Clutch Performance
  6. Rust Protection
  7. Water Sensitivity

36.     By naming, labeling, marketing, advertising and selling the 303 THF Products in the foregoing manner, and by describing the product using words such as "303" and "multi-functional," Defendant's sought to create, and did create, an image of the 303 THF Products in

the minds of Plaintiffs and other purchasers that would lead a reasonable purchaser to conclude that Defendant's 303 THF Products were completely safe and effective for use in their equipment and in all equipment made by the listed manufacturers.

37. Defendant's THF Products' name, labeling, advertising and marketing of its 303 THF Products was material to the reasonable purchaser.

38. At the time of Defendant's labeling, advertisements, marketing and other representations, and as Defendant already knew or should have known, the representations regarding 303 THF Products were false, deceptive and misleading to consumers and others seeking to purchase Tractor Hydraulic Fluid.

39. The John Deere "303" designation is over 50 years old and has been obsolete for many years. Certain ingredients of the original John Deere 303 fluid—such as sperm whale oil—have been banned since the 1970s and are no longer available for use. As a result, manufacturers have been unable to make and sell true "303" fluid for over forty (40) years and there are no longer any specifications for 303 fluid. At the time it was marketing and selling the 303 THF Products during the Class Period, Defendant knew or should have known that there were no specifications available for "303" tractor hydraulic fluid and, therefore, claims that the 303 THF Products met "303" specifications could not possibly be true, and Defendant had no way to ensure the accuracy of representations that its 303 THF Products were in compliance with any known specifications.

40. As Defendant knew, or should have known, the 303 THF Products manufactured by Defendant and sold in the yellow buckets lacked some or all of the additives required to provide the advertised "results," "features" and "benefits."

13

41.     As Defendant knew, or should have known, the 303 THF Products manufactured by Defendant and sold in the yellow buckets were made using flush oil, line wash or other waste oil products containing motor oil components and other additives that are never appropriate for use in a tractor hydraulic fluid.

42.     As Defendant knew, or should have known, the 303 THF Products manufactured by Defendant and sold in the yellow buckets did not meet all current specifications (and failed to meet certain obsolete specifications) for any manufacturers of farm, logging and construction equipment.  Alternatively, Defendant knew, or should have known, it had no basis on which to sell the 303 THF Products as Tractor Hydraulic Fluids that met the specifications of all manufacturers listed on the label because, on information and belief, either 1) Defendant's test data showed the viscosity, pour point and additive levels of the 303 THF fluids varied, was inconsistent, and did not meet some or all of the specifications of the manufacturers listed on the labels; or 2) Defendant did not have any test data to confirm the 303 THF Products always had the viscosity, pour point or additive levels that met all manufacturers' specifications or that were needed for a fluid suitable for use in purchasers'  equipment.

43.     At no point in time, on the label of the 303 THF Products or otherwise, did Defendant tell purchasers the truth, including that:

      a.   The "303" specification does not exist, is obsolete, could not be tested, and true 303 fluid was banned in the 1970s;

      b.   Defendant used low quality base oil, flush oil, line wash, used transformer oil, used turbine oil or other used oil in the 303 THF Products, all of which are unfit for use in hydraulic systems and should never be contained in a Tractor Hydraulic Fluid;

14

c.  The 303 THF Products contained a "down-treated" and/or no additive package;

d.  Defendant's test data did not confirm that all of the 303 THF Products met all manufacturers' specifications;

e.  Defendant has no idea whether all of the 303 THF Products it offered for sale met the requirements of, have acceptable anti-wear properties, or are suitable for use in tractors or other equipment; and

f.  The 303 THF Products may expose purchasers' equipment to increased wear and damage.

44.  Instead, the 303 THF Products were deceptively offered for sale as fluids containing quality base oils, sufficient additives, and meeting the long-defunct and now non-existent "303" specification and many other equipment manufacturer specifications.

**The State of Missouri's Testing of 303 THF**

45.  Because of the poor, uncertain quality of 303 Tractor Hydraulic Fluids and the deceptive way in which they are manufactured and sold, several private and governmental entities have been concerned about the sale of the fluids, the misleading nature of the labeling, and the damage the fluids can do to tractors and other equipment. The Missouri Department of Agriculture (MDA) is one such entity.

46.  In the summer of 2017, the MDA sampled fourteen (14) different 303 THF products, many of which claimed to meet manufacturers' specifications and claimed to work in almost every tractor. Defendant's 303 THF Products Super S SuperTrac 303 and Cam2 Promax 303 were purchased in Missouri by the MDA in 2017 and were two of the products tested.

15

47.     The MDA tested the fluids' viscosity, pour point, and additive and detergent levels to determine whether those levels met any current industry tractor hydraulic fluid specifications, namely, John Deere's J20C specifications.

48.     As a result of the testing, the MDA concluded that all fourteen (14) of these 303 THF products failed to meet any current specifications and were found to be underperforming to the point that damage was likely to result from use.

49.     Defendant's 303 THF Products were two of the fluids that failed to meet current specifications.  More specifically, Defendant's Super S SuperTrac 303 THF Product had a viscosity (Kinematic Viscosity @ 100C) level of 7.647.  Defendant's Cam2 Promax 303 THF Product has a viscosity (Kinematic Viscosity @ 100C) level of 7.633.  The J20C specification for KV@100C requires a minimum of 9.1 and therefore Defendant's 303 THF Products both fell short of the standard.

50.     Defendant's 303 THF Products were also found to have additive levels of calcium, phosphorous and zinc that were well below (50% or more less than) the additive levels found in fluids meeting the J20C specification.

51.     Furthermore, Defendant's 303 THF Products' Kinematic Viscosity @ 100C level does not meet many or all of the specifications of the other manufacturers Defendant lists on the labels and advertising of its 303 THF Products.

52.     The MDA's tests also indicated that Defendant's THF Products used waste, or "line flush" oil, which contain ingredients inappropriate for use in a tractor hydraulic fluid.

53.     The MDA notified Defendant, by letter, of their findings regarding the 303 THF products in the marketplace.  The MDA notified Defendant they felt the 303 THF Products were mislabeled, misbranded, and that the labels were deceptive and misleading and that the products

16

were exposing equipment to increased wear and damage. As a result, the MDA ordered Defendant to stop selling its 303 THF Products in Missouri.

**<u>Defendant Continues to Sell the Deceptive, Poor Quality 303 THF Products</u>**

54.     Despite receipt of the MDA's stop sale notices, test results and concerns regarding the damage that was being caused to equipment, Defendant continued to manufacture and sell the product in Iowa and throughout the United States.  Defendant did not in any way change the formula of the 303 THF Products after the State of Missouri's ban.

55.     Rather than pull the 303 THF Products off the market in all states, Defendant decided to continue to sell the 303 THF Products.  It made one change: the colorful photos of modern tractors were removed from the labels and were replaced with older, simpler tractors. However, in all other respects, the product was the same, and the labels continued to deceptively list the "303" designation, the equipment manufacturers' names, and the false and misleading claims of field testing and performance results as set forth below:



56.     Despite the MDA findings, Defendant continued to sell the 303 THF Products and make those representations about the quality and performance properties of the products even

though it knew the products did not meet any manufacturer specifications and that it did not have any data or evidence on which to base or substantiate the performance qualities represented on the label.

57.     Smitty's had no support for its claims of performance with respect to Super S 303 THF, yet it continued to sell the product to purchasers throughout the United States as a fluid recommended for use in almost all manufacturers' equipment, with representations of excellent performance in the areas of anti-wear properties, brake chatter, extreme pressure properties, foam suppression, PTO clutch performance, rust protection and water sensitivity.

58.     In 2018, in stark contrast to the quality represented to purchasers, Smitty's knew that the Super S 303 THF did not provide adequate wear protection and that its product could lead to excess deposit buildup inside transmissions and other parts of equipment.

### Plaintiffs' Experience with Defendants' Labeling and Products

59.     Plaintiffs each purchased Defendants' 303 THF Products on numerous occasions.

60.     As with all Members of the Class, in the period prior to the filing of this Class Action, Plaintiffs each purchased Defendant's 303 THF Products containing the label representations set forth above.

61.     Plaintiffs Terry Blackmore and Jason Klingenberg each purchased Defendant's 303 THF Products in Iowa.

62.     Plaintiffs Blackmore and Klingenberg each used the 303 THF Products in heavy machinery and other equipment.

63.     As a result of Defendant's manufacturing and offering the 303 THF Products for sale, Plaintiffs each purchased a Tractor Hydraulic Fluid that was falsely and deceptively offered for sale as a "303" fluid that contained quality base oils and additives, met required

specifications and was safe for use in equipment when, in reality, the fluid offered was of uncertain quality, lacked adequate viscosity and additives, contained line wash or flush oil, had a value much less than the price offered for sale, and was likely to expose equipment to increased risk of wear and damage.

64.     Plaintiffs reasonably relied upon Defendant's representation that the fluid was a "303" fluid and Defendant's own labeling, statements and advertisements concerning the particular qualities and benefits of the 303 THF Products.

65.     All reasonable purchasers would consider Defendant's 303 THF Products to be suitable for use in tractors and other equipment and would not have any understanding or way to know that Defendant's 303 THF Products were of uncertain quality, lacked adequate viscosity and additives, contained line wash or flush oil, had a value much less than the price offered for sale, and/or that use of Defendant's 303 THF Products would expose all equipment to increased wear and damage.

66.     A reasonable purchaser would consider Defendant's labeling, statements and advertisements when looking to purchase a Tractor Hydraulic Fluid.  As a result of using Defendant's 303 THF Products, Plaintiffs and Class Members:  (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were deprived of the benefit of the bargain because the 303 THF Products were different than what Defendant represented; (d) were deprived of the benefit of the bargain because the 303 THF Products had less value than what was represented; (e) did not receive a product that measured up to their expectations as created by Defendant; and/or (f) suffered increased and excessive wear and/or damage to their equipment, including damage to gears, seals and hydraulic systems.

67.     When Defendant manufactured, named, labeled, marketed, advertised, distributed, and sold Plaintiffs and Class Members its 303 THF Products, Defendant knew or should have known those products (1) did not meet manufacturer specifications and were not acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) were not an adequate substitute for and did not satisfy John Deere's JD-303 specifications; (3) were not adequate to provide extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) were not adequate to protect against rust and corrosion; and (5) were not appropriate for use in equipment of manufacturers including Allis-Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere 303, J20A, Oliver, Ford and Caterpillar.

68.     Plaintiffs used the 303 THF Products in the manner in which Defendant advised the products could and should be used.

69.     As a result of Defendant's 303 THF Products not meeting specifications as labeled, advertised, marketed, warranted, and promised, Defendant fraudulently or negligently induced Plaintiffs and Class Members to purchase its products through material misrepresentations, acted in a negligent manner, and were unjustly enriched.

70.     Defendant's manufacture, labeling, and sale of the 303 THF Products was deceptive and misleading in at least the following respects:

(a) Defendant's use of "303" in the name of the product was deceptive and misleading.  The 303 THF Products did not use John Deere 303's formula and would not meet the specifications for John Deere 303.  Defendant packaged its 303 THF Products in the yellow bucket with illustrations of modern tractors and equipment so as to further deceive and mislead and create the

impression that the 303 THF Products were legitimate tractor hydraulic fluids that met the specifications for John Deere 303 and other John Deere equipment.

(b) Defendant placed a deceptive and misleading statement on the product labels by claiming that John Deere 303 is one of the specifications for which the 303 THF Products are "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended."

(c) Defendant placed a deceptive and misleading statement on the product labels by listing eleven (11) other manufacturers as those for which the 303 THF Products are "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended," without specifying the equipment/specifications purportedly met for each of those eleven (11) manufacturers.

(d) Defendant engaged in deceptive and misleading conduct in failing to provide an adequate notice, disclaimer, or warning on the labels.

(e) Defendant placed a deceptive and misleading statement on the product labels by listing manufacturers of equipment in which the 303 THF Products purportedly may be used, when in reality the products do not meet many of the specifications for the listed manufacturers' modern or older model equipment.

(f) Defendant made a deceptive and misleading statement on the product labels by representing that the products have been field tested.

21

(g) Defendant made a deceptive and misleading statement on the product labels when claiming that the 303 THF Products "will provide excellent results in the areas of:

- Anti-wear properties
- Brake Chatter
- Extreme Pressure Properties
- Foam Suppression
- PTO Clutch Performance
- Rust Protection
- Water Sensitivity"

(h) Defendant engaged in misleading and deceptive conduct with regard to its 303 THF Products in failing to disclose that the product contained flush oil, line flush, waste oil and/or contained other materials that should never be contained in Tractor Hydraulic Fluid.

71. This action is brought by Plaintiffs against Defendant to recover all money paid by Plaintiff and Class Members to Defendant for purchase of their 303 THF Products which were labeled, marketed, advertised, and sold in the dishonest, misleading, and deceptive manners noted herein, for recovery of the damage caused to equipment owned by Plaintiff and the Class Members, for punitive damages, attorneys' fees, costs, and for all other remedies available to those aggrieved by Defendant's conduct.

## CLASS ACTION ALLEGATIONS

72. Plaintiffs bring this Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class of similarly situated persons:

> All persons and other entities who purchased Super S SuperTrac 303 Tractor Hydraulic Fluid, Super S 303 Tractor Hydraulic Fluid, and/or Cam2 ProMax 303 Tractor Hydraulic Oil in Iowa at any point in time from September 6, 2014 to present, excluding those who purchased for resale.

73. Also excluded from the Class is Defendant, including any parent, subsidiary, affiliate or controlled person of Defendant, Defendant's officers, directors, agents, employees and their immediate family members, as well as the judicial officers assigned to this litigation and members of their staffs and immediate families.

74. The 303 THF Products at issue were sold across Iowa and the United States through retailers. The Class Members may be identified through use of sales receipts, affidavits, or through sales records.

75. The proposed Class is so numerous that joinder of all Class Members is impracticable. Although the exact number and identity of each Class Member is not known at this time, there are thousands of Members of the Class.

76. There are questions of fact and law common to the Class which predominate over questions affecting only individual Class Members. The questions of law and fact common to the Class arising from Defendant's actions include, without limitation, the following:

   a. The components and qualities of Defendant's 303 THF Products, and the cost to Defendant to manufacture, distribute, market and sell its 303 THF Products;

   b. Whether Defendant was unjustly enriched;

   c. Whether Defendant was negligent;

   d. Whether Defendant deliberately failed to disclose material facts to consumers regarding the quality of the 303 THF Products and the obsolete nature of the products and the specifications the products claimed to meet;

   e. Whether Defendant's manufacturing, labeling, advertising, marketing, and/or sale of its 303 THF Products was deceptive, unfair, and/or dishonest as alleged in paragraphs 7-9, 11, 14-15, 27-44, 54-58, 63, and 65-70, above;

   f. Whether Defendant's 303 THF Products were being labeled, advertised and marketed as alleged in paragraphs 7-9, 11, 14-15, 27-44, 54-58, 63, and 65-70, above;

g. Whether Defendant's 303 THF Products in actuality were as alleged in paragraphs 10, 12-13, 15, 39-53, 56-58, 63, and 65-70, above;

h. Whether Defendant studied or tested its labeling and the effect of the labeling on consumers' perceptions, and whether Defendant studied the susceptibility of consumers who might purchase tractor hydraulic fluid;

i. Whether Defendant's representations regarding its 303 THF Products were false and made knowingly by Defendant;

j. Whether Defendant's representations were false and made negligently by Defendant; and,

k. Whether use of the 303 THF Product caused and/or exposed equipment to damage.

77. Plaintiffs' claims are typical of those in the putative Class because each purchased Defendant's 303 THF Products and was similarly treated.

78. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of other Members of the Class. The interests of the other Class Members will be fairly and adequately protected by Plaintiffs and counsel, who have extensive experience prosecuting complex litigation and class actions.

79. A Class Action is the appropriate method for the fair and efficient adjudication of this controversy. It would be impracticable, cost prohibitive, and undesirable for each Member of the Class to bring a separate action. In addition, the presentation of separate actions by individual Class Members creates the risk of inconsistent and varying adjudications, establishes incompatible standards of conduct for Defendants, and/or substantially impairs or impedes the ability of Class Members to protect their interests. A single Class Action can determine, with judicial economy, the rights of the Members of the Class.

80.     A Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

81.     Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class. The Class Action is based on Defendant's acts and omissions with respect to the Class as a whole, not on facts or law applicable only to the representative Plaintiffs.  All Class Members who purchased Defendant's products were treated similarly.  Thus, all Class Members have the same legal right and interest in relief for damages associated with the violations enumerated herein.

82.     Class certification is also appropriate for class-wide injunctive relief pursuant to Rule 23(b)(2).

83.     Plaintiffs assert in Counts I through IV, below, the following claims on behalf of himself and the Class:

- Count I – Negligence

- Count II – Unjust Enrichment

- Count III – Fraud/Misrepresentation

- Count IV – Negligent Misrepresentation

## COUNT I
### (Negligence)

84.     Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

87.     Defendant owed a duty of at least reasonable care to the purchasers of its 303 THF Products, including a duty to use reasonable care in the manufacture, sampling, testing, labeling and marketing of the finished 303 THF Products.

25

88. Defendant breached this duty by the acts and omissions alleged herein, including but not limited to:

a. Distributing and using misleading labeling information regarding the 303 THF Products qualities and OEM specifications met by product;

b. Failing to adequately warn and instruct purchasers about the true nature of the 303 THF Products and potential harm to equipment caused by use of the 303 THF Products in equipment for which it does not meet specifications;

c. Failing to adequately ensure the 303 THF Products manufactured and sold met the advertised specifications;

d. Failing to utilize adequate testing and other controls to ensure the 303 THF Products met the advertised specifications; and,

e. Instituting and/or allowing careless and ineffective product manufacturing protocols.

89. As a result of Defendant's negligence, Defendant's 303 THF Products had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications.

90. Defendant's negligence caused or contributed to cause injuries and damages to Plaintiffs and the Class Members and caused Plaintiffs' and the Class Members' equipment to suffer harm and damage, including wear, damage and leakage in the seals, exposure to damage in the spiral gear in the drive, improper and poor shifting, wear and damage to the wet brakes, high pump leakage, and damage from deposits, sludging and thickening. Defendant's negligence also

caused or contributed to cause Plaintiffs and the Class Members to overpay for a product that was worthless and/or worth much less than the sale price.

91. Plaintiffs and Class Members are thus entitled to an award of compensatory damages, prejudgment interest and post-judgment interest.

92. Defendant's conduct was grossly negligent and showed a complete indifference to or conscious disregard of the rights of others, including Plaintiffs and Class Members, such that punitive damages are thus warranted.

**COUNT II**
**(Unjust Enrichment)**

93. Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

94. As a result of Defendant's deceptive, fraudulent, and misleading naming, labeling, advertising, marketing, and sales of the 303 THF Products, Plaintiffs and the Class Members purchased Defendant's 303 THF Products and conferred a benefit upon Defendant by purchasing obsolete and harmful tractor hydraulic fluid, which benefit Defendant appreciated and accepted.

95. Those benefits were obtained by Defendant under false pretenses because of Defendant's concealments, misrepresentations, and other deceptive, misleading, and unfair conduct relating to the 303 THF Products.

96. Defendant was enriched at the expense of Plaintiffs and other Class Members through the payment of the purchase price for Defendant's 303 THF Products.

97. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and Class Members have suffered damages in an amount to be determined at trial.

98.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and the other Class Members, in light of the fact that the 303 THF Products purchased by Plaintiffs and the other Members of the Class were not what Defendant represented them to be.  Thus, it would be inequitable or unjust for Defendant to retain the benefit without restitution to Plaintiffs and the other Members of the Class for the monies paid to Defendant for the 303 THF Products.

99.     By reason of the foregoing, Defendant should be required to account for and disgorge all monies, profits, and gains which it has obtained at the expense of Plaintiffs and Class Members.

**COUNT III**
**(Fraudulent Misrepresentation)**

100.     Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

101.     Defendant made representations regarding its 303 THF Products, as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and that the 303 THF Products provided certain qualities, results and benefits.

102.     Defendant's representations set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, that the 303 THF Products provided certain qualities, results and benefits, and Defendant's failure to inform consumers of the true nature of the product and the obsolete specifications, were false and made knowingly by Defendant, and were therefore fraudulent.

103. Defendant's representations as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met specifications, that the 303 THF Products provided certain qualities, results and benefits, and Defendant's failure to inform consumers of the true nature of the product and the obsolete specifications, were made by Defendant with the intent that Plaintiffs and other Class Members rely on such representations.

104. Defendant's representations as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, that the 303 THF Products provided certain qualities, results and benefits, and Defendant's failure to inform consumers of the true nature of the product and the obsolete specifications, were made by Defendant despite knowing the representations were false at the time the representations were made, and/or without knowledge of the truth or falsity of the representations.

105. Defendant's representations were material to the purchase of the 303 THF Products.

106. Plaintiffs and Class Members relied on Defendant's representations, and such reliance was reasonable under the circumstances.

107. Defendant's conduct as set forth herein with regard to the name, labeling, marketing and sale of the 303 THF Products constitutes fraud on Plaintiffs and all Class Members.

108. Plaintiffs and Class Members have been economically damaged by Defendant's fraudulent conduct with regard to the marketing and sale of the 303 THF Products.

109.     As a direct and proximate result of Defendant's illegal conduct, Plaintiffs and Class Members have suffered ascertainable losses of money and other damages.

110.     Defendant's conduct as described herein was intentional and/or in reckless disregard for the rights of Plaintiffs and other Class Members.

111.     Defendant's conduct is such that an award of punitive damages against Defendant is appropriate.

## COUNT IV
### (Negligent Misrepresentation)

112.     Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

113.     Defendant made representations regarding its 303 THF Products, as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and that the 303 THF Products provided certain qualities, results and benefits.

114.     Such representations were made by Defendant with the intent that Plaintiffs and the Class Members rely on such representations in purchasing Defendant's 303 THF Products.

115.     Such representations were material to Plaintiffs' and the Class Members' purchase of Defendant's 303 THF Products.

116.     Such representations were false.

117.     Defendant failed to use ordinary care and wase negligent in making and/or allowing to be made the representations set forth above.

118.     Plaintiffs and the Class Members relied on such representations and such reliance was reasonable under the circumstances.

30

119.    Plaintiffs and Class Members have been economically damaged by Defendant's negligent conduct with regard to the marketing and sale of the 303 THF Products.

120.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered ascertainable losses of money.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described in this Class Action Complaint, respectfully requests that:

A.  The Court certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adjudge Plaintiffs and counsel to be adequate representatives thereof;

B.  The Court enter an Order requiring Defendant to pay actual and punitive damages to Plaintiffs and the other Members of the Class;

C.  The Court enter an Order awarding Plaintiffs, individually and on behalf of the other Members of the Class, the expenses and costs of suit;

D.  The Court enter an Order awarding to Plaintiffa, individually and on behalf of other Members of the Class, pre-and post-judgment interest, to the extent allowable; and,

E.   For such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs and Class Members hereby demand a jury trial on all issues of fact and damages in this action.


Date:  September 6, 2019

Respectfully submitted,

**LUNDBERG LAW FIRM, P.L.C.**


BY: _____ */s/ Paul D. Lundberg*
          Paul D. Lundberg, IA Bar #WO0003339
          600 Fourth St., Suite 906
          Sioux City, Iowa  51101
          Tel: 712-234-3030
          paul@lundberglawfirm.com


HORN AYLWARD & BANDY, LLC


BY: * /s/ Thomas V. Bender*
          Thomas V. Bender, KS Bar #22860
          Dirk Hubbard, KS Bar #15130
          2600 Grand, Ste. 1100
          Kansas City, MO 64108
          (816) 421-0700
          (816) 421-0899 (Fax)
          tbender@hab-law.com
          dhubbard@hab-law.com

WHITE, GRAHAM, BUCKLEY,
& CARR, L.L.C

BY:_____/s/ *Bryan White*_____
                 William Carr.  KS Bar #16301
                 Bryan T. White KS Bar #23255
                 19049 East Valley View Parkway
                 Independence, Missouri 64055
                 (816) 373-9080 Fax: (816) 373-9319
                 bcarr@wagblaw.com
                 bwhite@wagblaw.com

**ATTORNEYS FOR PLAINTIFFS
AND CLASS MEMBERS**