IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| TERRY BLACKMORE, et al. ) | |
| ) | |
| each on behalf of himself ) | |
| and all others similarly situated, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 5:19-cv-04052 |
| ) | |
| SMITTY'S SUPPLY, INC., et al. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' RESISTANCE IN OPPOSITION
TO DEFENDANTS' MOTION TO STAY PROCEEDINGS
PENDING RULINGS BY JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

**I.  INTRODUCTION**

This is a class action lawsuit involving tractor hydraulic fluid manufactured by Defendants Smitty's Supply, Inc. and Cam 2 International, LLC (collectively, "Defendants") and sold in the State of Iowa to the Class Representatives and others. Plaintiffs in this putative class action assert that the tractor hydraulic fluid at issue, four identical fluids referred to herein as "Smitty's 303 THF Products," were negligently designed, manufactured, and sold. Plaintiffs further claim that the label contained common false statements regarding the performance qualities and Original Equipment Manufacturer specifications met, as well as other common deceptive content. Plaintiffs allege Smitty's 303 THF Product contained automotive motor oil line flush, other line flush, used transformer oil, used turbine oil, and other used oils – materials which Plaintiffs claim are inappropriate for use as components of tractor hydraulic fluid.

The depositions, document production, and ESI/email discovery for this Iowa Action have been conducted in two similar cases brought on behalf of Missouri and Kansas purchases,

respectively, *Hornbeck, et al. v. Tractor Supply Company, et al.*, Case No. 4:18-cv-0523-NKL, United States District Court for the Western District of Missouri ("Missouri Action"),[1] and *Zornes et al. v. Smitty's Supply, Inc., et al.* No. 19-2257-JAR-TJJ, pending in the United States District Court for the District of Kansas ("Kansas Action"). In depositions taken and documents produced in the Missouri Action and Kansas Action, Smitty's management has admitted that Smitty's 303 THF Products failed to meet the OEM specifications listed on the label, that the fluid failed to provide many of the performance benefits set forth on the label, and the fluid's composition was such that it should not have been used in any models/years of tractors/construction equipment. Smitty's has admitted in documents and testimony that it had for years used automotive line flush, other line flush, used transformer oil, and other line flush and used oils to manufacture Smitty's 303 THF Products. (*See, e.g.*, Exs. 1, 2, 3, 4 and 5).

Plaintiffs also allege that Defendant Tractor Supply Company was aware that the Smitty's 303 THF Products contained inappropriate ingredients such as automotive line flush and used transformer oil. Tractor Supply has denied any such knowledge in all deposition testimony provided to date, but in December of 2019 Plaintiffs independently obtained and produced in the Kansas Action correspondence sent by another manufacturer to Tractor Supply President Greg Sandfort, advising Tractor Supply that the Smitty's 303 THF Products contained precisely these improper materials. That letter noted, in part, that "the product that you are now placing on your shelves from one of our competitors contains mostly two components, reclaimed transformer oil and line wash waste." It also noted Smitty's was "packaging a substandard product for your customers" that "could include contaminants as dangerous as PCBs since they are known to be in

---

[1] The Parties previously resolved the *Hornbeck* Missouri Action for the class of Missouri purchasers, with Judge Nanette Laughrey granting Preliminary Approval on August 19, 2019. Settlement administration is close to completion in that Class Action Settlement for Missouri purchases, with the Fairness Hearing set for March 10, 2020.

reclaimed transformer oil." The letter advised Tractor Supply and Mr. Sandfort that "the additives that could be in line wash, from motor oil formulas, can emulsify water with oil and damage hydraulic systems." (*See* Ex. 6). This type of discovery, obtained in the other cases, will be used in this case pursuant to the coordination agreements of the Parties in all related cases. Simply put, these cases are moving efficiently without spending (and certainly not wasting) this Court's judicial resources and there has not been and will not be risk of material duplication of efforts or pretrial rulings.

This Resistance in Opposition is filed because Defendants have now moved to stay this matter pending the Joint Panel on Multidistrict Litigation's ("JPML") decision on Defendants' recently-filed motion to transfer and consolidate this and other cases into a Multidistrict Litigation ("MDL") proceeding.[2]

## II. SUMMARY OF RESPONSE

As explained more fully below, Defendants' request for a stay should be denied for several reasons:

1. A stay will not preserve judicial resources. As previewed above, discovery is already being coordinated and is expected to be very limited in this Iowa Action. The Parties have expressly agreed in this Court and in the other Courts that the significant amount of discovery that has been completed in the Missouri Action and Kansas Action will not be duplicated and can be used across all cases. Simply put, there is little risk of the need for much discovery or many, if

---

[2] Defendants seek MDL transfer for this case based upon only the following seven (7) pending cases, each of which involve the same counsel for the Plaintiffs and Defendants: *Zornes, et al. v. Smitty's Supply, Inc., et al.*, Case No. 19-cv-2257-JAR-TJJ (D. Kan.); *Wurth, et al. v. Smitty's Supply, Inc., et al.*, Case No. 19-cv-00092-TBR (W.D. Kent.); *Buford v. Smitty's Supply, Inc.*, et al. Case No. 1:19-cv-00082-BRW (E.D. Ark.); *Mabie v. Smitty's Supply, Inc., et al.*, Case No. 4:19-cv-03308 (S.D. Tex); *Klingenberg v. Smitty's Supply, Inc., et al.*, Case No. 19-cv-02684 (D. Minn.); *Fosdick, et al. v. Smitty's Supply, Inc., et al.,* Case No. 2:19-cv-01850-MCE-DMC (E.D. Cal.); *Graves, et al. v. Smitty's Supply, Inc., et al.*, Case No. 34:19-cv-05089-SRB (W.D.Mo.).

any, additional discovery rulings in this or other cases. Indeed, it is hard to envision any scenario where the same discovery motion will be pending in different cases and risk differing rulings.

2. A stay will materially prejudice Plaintiffs in that deadlines agreed upon by the Parties will be pushed back and Plaintiffs will be being prevented from moving forward with the expert designations and other matters leading up to the scheduled class certification briefing.

3. There is no legitimate hardship or inequity to Defendants if this action is not stayed. There are no upcoming deadlines for Defendants, other than for production of any communications with Iowa retailers. Defendants have agreed to provide materials regarding communications with retailers by March 5th. Further, because this case is only for Iowa purchases such that the class claims in the various cases do not overlap, there is no possibility of inconsistent class certification rulings. Thus, denying Defendants' motion will not prejudice Defendants.

4. The request for stay should also be denied because the likelihood of transfer to a consolidated MDL proceeding is low. As explained more fully below, the JPML does not typically grant requests for consolidation and transfer of a relatively small number of cases (less than 10) involving the same attorneys who are engaged in cooperative, consolidated discovery efforts and who have resolved one of the cases on a single state level, like the Parties have in these cases.

5. Finally, Defendants only sought the JMPL transfer and stay in these cases after the Kansas Court compelled the deposition of Tractor Supply Company's former CEO and President Greg Sandfort to go forward. The Kansas Court's Order was entered after a phone hearing and after the Court reviewed and considered an extensive record regarding Plaintiffs' attempts to schedule and formally notice Mr. Sandfort's deposition. A stay in this case would allow Defendants to side-step that Order and serve to improperly reward Defendants for such improper litigation tactics.

4

### III. SUMMARY OF PROCEEDINGS IN THIS CASE

This case was filed on September 6, 2019, and a First Amend Complaint was filed on November 5, 2019. (Doc. 1, 16). Defendants Smitty's Supply, Inc. filed an Answer on November 19, 2019, and Defendants Tractor Supply Company and Cam2 International, LLC each filed an Answer on January 23, 2020. (Doc. 17, 34, 35). The Parties submitted their Planning Report on December 17, 2020. (Ex. 7). In that Report, the Parties referenced related Class Actions including the *Hornbeck* Missouri Action and the *Zornes* Kansas Action, noting specifically that the Parties agreed that discovery would be streamlined and coordinated with the work performed in the Missouri Action and Kansas Action, so that efforts would not be duplicated/wasted and so that resources would be preserved. In the Planning Report, the Parties agreed all documents produced in the *Hornbeck* Missouri Action and the *Zornes* Kansas Action were deemed produced in this Iowa Action. The Parties also agreed that all depositions taken in the *Hornbeck* and *Zornes* Actions, as well as all ESI/email discovery from the Zornes Kansas Action, could be used in this Iowa Action. A Scheduling Order was entered on January 9, 2020. Plaintiffs provided their Initial Disclosures on January 15, 2020, and Defendants provided their initial disclosures on February 14, 2020. A Joint Motion for Protective was filed on February 10, 2020. There is no true risk of duplication of discovery in these cases.

There is no overlap of classes or class claims in any these cases, either, as each covers purchases made in unique states. In all of these cases, the same counsel represent all Plaintiffs and the same counsel represent all Defendants. Not once since this case was filed, nor at any time while the coordinated discovery was proceeding in the Kansas Action, did Defendants seek transfer and consolidation in an MDL proceeding or seek to stay these cases. Not once did Defendants claim prejudice or risk of inconsistent rulings or the waste of judicial resources.

Instead, the Parties have agreed—via Scheduling Order submissions and Initial Rule 26 disclosures exchanged — that discovery is being coordinated in each of these cases such that all depositions, ESI/email, and documents produced in the Missouri Action and Kansas Action are to be used in this Iowa Action. (Exhibits 7, 8 and 9).

Instead, it appears Defendants' new arguments for consolidation and a stay of proceedings were prompted by a discovery order in the Kansas Action. Most recently in the Kansas Action, Defendant Tractor Supply Company resisted producing witness Greg Sandfort, a key witness in the case. On February 5, 2020 the Court overruled Defendants' objection to producing Mr. Sandfort for deposition and ordered Defendants to produce Mr. Sandfort by March 5, 2020. Only after that order—six (6) days after that Order—did Defendants suddenly decide a transfer and stay was required to coordinate discovery and avoid inconsistent rulings. Prior to that order, the Parties had for six (6) months been coordinating discovery efficiently across all cases with no claims of prejudice or inefficiency by Defendants.

## IV.  ARGUMENT

During the pendency of a motion to transfer before the JPML, this Court retains jurisdiction over the case. J.P.M.L. R.P 1.5, *In re Four Seasons Sec. Laws Litig.*, 362 F. Supp 574 (J.P.M.L. 1973); *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 54 F. Supp. 2d 1042, 1047–48 (D. Kan. 1999). The decision on whether to stay is a matter within the discretion of the Court. Further, the Manual for Complex Litigation (Fourth) notes that such a stay should not automatically issue:

> The transferor court should not automatically stay discovery; it needs to consider provisions in local rules that may mandate early commencement of discovery and an order modifying such provisions' impact on the litigation may be necessary. Nor should the court automatically postpone rulings on pending motions, or generally suspect further proceedings. When notified of the filing of a motion for transfer, therefore, maters such

as motions to dismiss or to remand, raising issues unique to the particular case, may be particularly appropriate for resolution before the Panel acts on the motion to transfer.

Section 20.131. The Court should exercise its discretion here to deny the stay.

"A case is not automatically stayed merely because a party has moved the JPML for transfer and consolidation." *Asmann v. Dairy Farmers of Am., Inc.*, 2012 WL 1136865, at *2 (D. Kan. Apr. 4, 2012). More specifically, the pendency of a motion to transfer "does not affect or suspend orders and pretrial proceedings in any pending federal district court action." *Id*. The decision of whether to stay this case is left to the discretion of the Court. *Id*. As noted by Defendants, courts typically consider three factors: (1) potential prejudice to the nonmoving party if the case is stayed; (2) hardship and inequity to the moving party if the action is not stayed; and (3) judicial economy, *i.e.* whether judicial resources would be saved. Those factors weigh against granting Defendants' request for a stay in this case, which has been moving forward in an orderly and coordinated fashion with the other cases that have been pending for months in other states.

### A. A Stay Will Not Save Judicial Resources

When considering whether a stay will preserve judicial resources, Courts consider factors such as whether they would need to spend significant time becoming familiar with a case that is likely to be transferred to another Court, as well as whether issues and rulings considered and made by the Court will likely need to be reconsidered, duplicated or ruled on in other Courts as well. *See Associated Wholesale Grocers, Inc. v. United Egg Producers*, 2011 WL 1113546, at *2 (D. Kan. Mar. 24, 2011); *Thomas v. Ameriquest Mortg. Co.*, 2007 WL 3287842, at *1 (S.D. Ala. Nov. 5, 2007). Neither of those factors are a significant concern in this case.

First, as previously noted, the Parties have agreed to coordinate discovery across all cases. In the Parties' Planning Report, they agreed that relevant discovery taken in the *Hornbeck* Missouri

7

Action and the *Zornes* Kansas Action could be used in this case, noting that "all documents and ESI/emails produced as part of the Rule 26(a)(1) disclosures or discovery in ***Zornes*** … shall be deemed produced in this action as of that date without the need to reproduce those materials" and that "all deposition from the Kansas action and from ***Hornbeck*** … are also deemed useable in accordance with Federal Rule 32, as if taken in this action." (Ex. 7, p.4).

This coordinated and consolidated discovery effort is also present in the other related cases. On Friday, February 14, 2020 Defendants served their Initial Rule 26 Disclosures in this action and in the Minnesota, Kentucky, Arkansas, California, and Texas actions. (Exhibits 9, 10, 11, 12, 13, and 14). In each of those disclosures, Defendants confirmed that documents and information that would be used to support the Parties' claims and defenses in those cases included "[a]ny documents deemed produced in *Zornes et al. v. Smitty's Supply, Inc., et al.* No. 19-2257-JAR-TJJ (D. Kan)" and "[a]ny deposition discovery from *Zornes* and *Hornbeck et al. v. Tractor Supply Company*, *et al*., No. 4:18-cv-0523-NKL (W.D.Mo.). In other words, discovery that has already been taken was taken with the intent to use it in all cases, which removes the risk that there will be duplicative discovery or the need for rulings on discovery that could cause some inconsistencies. This coordination has ensured judicial resources will not be wasted and, therefore, there is no need for a stay to guard against that concern. *See*, *e.g.*, *In re: CP4 Fuel Pump Marketing, Sales Practices, and Products Liability Litig.*, 412 F.Supp.3d 1365, 1367 (J.P.M.L. 2019) ("the presence of the same plaintiffs' counsel in almost all the actions suggest that cooperation and informal coordination by the involved courts and counsel are practicable, and should be effective in minimizing or eliminating duplicative pretrial proceedings.")

Third, a stay will not preserve any judicial resources with respect to class certification rulings, either. The class in this case is limited to Iowa purchases, and the claims in this case arise

8

under Iowa law. This Court is well versed in this case and in Iowa law and the law of this District and the Eighth Circuit regarding class certification. This Court would try the certified Class Action, and thus it is this Court's discretion regarding manageability and superiority that should matter. Accordingly, this Court should decide the class certification issue for the unique Iowa purchases class in this Iowa Action, and no resources are saved, and no inconsistencies are avoided, by staying the current deadlines in this case.

### B. A Stay Would Prejudice Plaintiffs

Delay itself would no doubt prejudice Plaintiffs, who have been working diligently to move this case to the certification deadlines with no objection by Defendants, despite the pending related cases in this and other states. A stay would suddenly put a stop to those efforts and deprive Plaintiffs of the rights to seek relief without further delay.

The upcoming deadlines in this case are as follows:

- 2/21/20 -- Defendants' substantive discovery responses and documents are due with regard to product sales

- 3/5/20 – Defendants' substantive discovery responses and documents are due with regard to state-specific retailers and communications with retailers

- 3/20/20 – Plaintiffs' Experts

In view of the significant delays and ripple effect of undoing of the current deadlines, coupled with the fact a stay will not preserve judicial resources in any material way, the real prejudice to Plaintiffs far outweighs the other pertinent factors and requires denial of Defendants' motion.

### C. Defendants Will Suffer No Actual Hardship from a Stay

Defendants argue they will suffer hardship if the case is not stayed, but careful scrutiny of their arguments reveals the hardship is only imagined, especially in view of the ongoing coordination by the Parties. Defendants claim only a few alleged hardships: multiple pleading and

9

Case 5:19-cv-04052-CJW-KEM   Document 44   Filed 02/27/20   Page 9 of 13

discovery requirements and potentially conflicting or inconsistent rulings on pretrial matters. They do not explain in any way the details of those concerns or what the potential conflicts might be specifically. For that reason, Plaintiffs respectfully submit they have failed to meet their burden of showing actual hardship or prejudice.

In any case, Defendants' concerns are unfounded for the reasons described above. The actual coordination of discovery and the completion of a significant amount of discovery to date belies Defendants' claims of hardship and the risk of inconsistencies. Further, because there are no overlapping classes sought or overlapping class claims pursued in any of the cases, there is no possibility of inconsistent rulings. Further, as reflected on attached Exhibit 15, Defendants agreed to produce certain Iowa-specific information and materials regarding sales and retailers, and they should not be allowed to avoid production of materials they have promised to produce in the next few weeks in this Iowa Action. Finally, each of the other immediate deadlines—amending to add parties and experts—are ones which most affect Plaintiffs and which Plaintiffs are willing to meet.

### D. The Likelihood of Transfer and Consolidation in Another District is Low

Finally, Plaintiffs respectfully submit the Court should also consider the likelihood this case will be transferred when deciding whether to issue a stay. If it is more likely than not the motion to transfer in the JPML will be denied, there is no reason to stay these proceedings and a stay would serve only to cause even greater prejudice to Plaintiffs.

Recent opinions issued by the JPML in analogous cases strongly suggest the Panel will deny Defendants' request to transfer this and the other related cases. For example, on December 18, 2019, the Panel denied transfer of litigation involving multiple class actions related to a data breach. *In re: StockX Customer Data Security Breach Litig.*, 412 F.Supp.3d 1363 (J.P.M.L. 2019). In that case, the defendants sought to transfer five (5) class action cases to a single proceeding.

Even though the cases were filed by different plaintiff's counsel, the Court held that transfer was not warranted, emphasizing that "centralization under Section 1407 should be the last solution after considered review of all other options" and that "[w]here only a few actions are involved, the proponent of centralization bears a heavier burden to demonstrate that centralization is appropriate." *Id*. at 1364-65. The defendants did not meet their burden in that case because 1) the litigation involved a small number of actions, 2) the litigation was not growing (the last action being filed three (3) months ago); and 3) cooperation among the involved Courts and counsel for workable alternatives to centralization. *Id*. That is the situation we find in this case: the litigation involves only eight (8) filed actions, each involving the same counsel; the litigation is not growing, with the most recent case filed three (3) months ago; and cooperation among counsel regarding discovery and preparation of the cases.

Transfer was similarly denied in the case *In re: CP4 Fuel Pump Marketing, Sales Practices, and Products Liability Litig.*, because of the small number of actions, the presence of the same defendants and same plaintiffs' counsel, and the cooperation and coordination of the parties. The Panel explained,

> there are only ten constituent actions and two tag-alongs, and each involves only one vehicle manufacturer…[,] [so] [t]he risk of redundant discovery and inconsistent class certification rulings is accordingly less significant. That risk is further diminished in that plaintiffs in nine of the ten actions, as well as one of the two tag-alongs, are represented by the same attorneys. The relatively small number of actions and the presence of the same plaintiffs' counsel in almost all the actions suggest that cooperation and informal coordination by the involved courts and counsel are practicable and should be effective in minimizing or eliminating duplicative pretrial proceedings."

412 F.Supp.3d at 1367. Again, the same situation exists here: there are less than ten cases, all involving the same attorneys, and the Parties' have engaged in coordinated discovery across all cases.

11

Case 5:19-cv-04052-CJW-KEM   Document 44   Filed 02/27/20   Page 11 of 13

These very recent, very analogous cases suggest the chances of transfer and consolidation away from this Court are not high; certainly not high enough to prejudice Plaintiffs with a stay that will deprive them of moving this case along to the filing and seeking of an order on class certification.

## V. CONCLUSION

For the reasons set forth herein, Defendants' Motion to Stay Proceedings Pending Rulings by Judicial Panel on Multidistrict Litigation should be denied in total.

February 27, 2020                                                  Respectfully submitted,


BY:     /s/ Paul D. Lundberg
        Paul D. Lundberg
        IA Bar #W00003339
        Attorney for Plaintiffs
        **LUNDBERG LAW FIRM, P.L.C.**
        600 Fourth St., Suite 906
        Sioux City, Iowa  51101
        Tel: 712-234-3030
        paul@lundberglawfirm.com


BY:    /s/ Thomas V. Bender
        Thomas V. Bender, KS Bar #22860
        Dirk Hubbard, KS Bar #15130
        HORN AYLWARD & BANDY,LLC
        Attorneys for Plaintiffs
        2600 Grand, Ste. 1100
        Kansas City, MO 64108
        (816) 421-0700
        (816) 421-0899 (Fax)
        tbender@hab-law.com
        dhubbard@hab-law.com


BY:      /s/ Bryan T. White
        William Carr.  KS Bar #16301
        Bryan T. White KS Bar #23255
        Attorneys for Plaintiffs
        WHITE, GRAHAM, BUCKLEY,

& CARR, L.L.C
19049 East Valley View Parkway
Independence, Missouri 64055
(816) 373-9080 Fax: (816) 373-9319
bcarr@wagblaw.com
bwhite@wagblaw.com

***Attorneys for Plaintiff and Class Members***

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that this document was filed electronically with the United States District Court for the Northern District of Iowa, with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons this 27th day of February, 2020.

                                              /s/ Bryan T. White

13

Case 5:19-cv-04052-CJW-KEM   Document 44   Filed 02/27/20   Page 13 of 13